

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 2, 2021

**BY ECF**
The Honorable Richard M. Berman
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Leo Hernandez*, 20 Cr. 79 (RMB)

Dear Judge Berman:

      The Government respectfully submits this letter in opposition to the defendant's October 26, 2021 bail application (Dkt. 50). That application should be denied because "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

## Background

      From 2014 through 2018, the defendant was a "crew chief," who recruited individuals to be so-called "patients" of Dr. Joseph Olivieri in Manhattan. The defendant recruited those individuals to visit Olivieri to obtain medically unnecessary prescriptions for oxycodone, oxymorphone, morphine sulfate, and amphetamines. The "patients" then filled their prescriptions and sold their pills to the defendant, who resold them to others around New York City at a profit.

      During much of that time period, the defendant frequently traveled between the United States and Colombia. For example, travel records reflect that in 2017 alone, the defendant flew between the United States and Colombia approximately twenty times.

      In 2018, Olivieri and another crew chief were arrested and publicly charged. *See United States v. Olivieri, et al.*, 18 Cr. 316 (PAC), Dkt. 5, 43. That same year, the defendant's frequent back and forth between the United States and Colombia stopped. Instead, the defendant stayed in Colombia. (*See also* Dkt. 50 at 1). In 2020, the defendant was charged in a sealed indictment with participating in a narcotics conspiracy, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C). (*See* Dkt. 26 at 2, 4).

      In April 2021, the defendant was taken into custody in Colombia on the instant charges. (*See* Dkt. 28). When the defendant was approached by the authorities, he held himself out as a member of law enforcement, stating falsely that he was with the Federal Bureau of Investigation (the "FBI"). He went so far as to present the authorities with fraudulent FBI credentials and associated paraphernalia, as depicted in these photographs:

November 2, 2021
Page 2

  

At the time of his arrest, the defendant also had in his possession a fraudulent identity document that suggested, falsely, that he had been a member of the armed services, depicted in the photograph below. To go along with those fake law enforcement and military credentials, the defendant, who has a previous felony drug conviction, also had in his possession a gun that fires rubber bullets, depicted in the photograph below:

 

### Discussion

"Subject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required

November 2, 2021
Page 3

and the safety of the community if the judicial officer finds that there is probable cause to believe that the [defendant] committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3)(A). Here, a grand jury found that there was probable cause to indict the defendant with violating Title 21, United States Code, Sections 846 and 841(b)(1)(C), exposing him to a maximum term of imprisonment of twenty years. Accordingly, there is a presumption that no conditions will suffice. The defendant cannot rebut that presumption here.

"[I]n determining whether there are conditions of release that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community," the Court should "take into account," among other things, "the nature and circumstances of the offense charged," and "the history and characteristics of the [defendant]." 18 U.S.C. § 3142(g)(1), (3). Those factors weigh heavily in favor of detention here.

The nature and circumstances of the offense charged confirm that the defendant is a danger to the community. As described above, the defendant is charged with diverting oxycodone, among other substances, to the black market in New York City. The danger that the ongoing opioid crisis poses to our community is well established.

More than any other factor, however, the history and characteristics of the defendant confirm that there are no conditions of release that will reasonably assure the appearance of the defendant as required. Although the Government does not presently have evidence to prove that the defendant flew to Colombia in 2018 for the purpose of evading charges here, the Government has strong evidence that, while the defendant was in Colombia in 2018, he came to believe that he potentially faced criminal charges here, and, as a result, he stayed in Colombia—a departure from his prior travel habits.[1]

First, even in the absence of any specific evidence, the Court could very reasonably infer that the defendant's decision to stay in Colombia instead of returning to the United States was driven by the public prosecutions of the defendant's accomplices in this criminal diversion scheme. Second, the Government does in fact have evidence to show that the defendant remained in Colombia for the purpose of avoiding prosecution, and actively sought to avoid law enforcement detection there. A cooperating witness for the Government (the "CW") who participated alongside the defendant in the charged conspiracy and who spent time with the defendant in Colombia before returning to the United States to face the charges here would testify that, while they were in Colombia, the defendant and the CW discussed, in substance and in part, the fact that they were wanted in the United States. According to the CW, the defendant told the CW, in substance and in part, that the defendant obtained from another individual recommendations for

---

[1] The defense misstates the Government's position. The Government has never "concede[d] that when [the defendant] . . . moved to Colombia . . . there was no ongoing investigation of the defendant." (Dkt. 50 at 4). Nor has the Government ever "concede[d] that the defendant would not have had any knowledge of" "any investigation into the allegations contained in this criminal matter." (*Id.*). The Government simply does not have evidence of the defendant's knowledge—*at the time of his 2018 departure for Colombia*—of any investigation into him. As set forth above, however, his knowledge of the investigation while he remained in Colombia is well established.

November 2, 2021
Page 4

ways to evade detection by U.S. law enforcement while abroad. For example, the CW would testify that the defendant recommended, in substance and in part, that they stop using their U.S.-based phone, email, and bank accounts. The CW would further testify that the defendant used a fraudulent Colombian identity document to travel within Colombia, again in the hopes of avoiding law enforcement detection.

Nor was that false Colombian identity document the only fraudulent document that the defendant possessed. As described and depicted above, the defendant has illustrated that he is perfectly capable and willing to obtain and present fake credentials—even if it means impersonating a federal officer or a member of the armed services. He clearly has access to individuals who could furnish him with fraudulent travel documents. And, having resided in Colombia for the past three years (not to mention his very frequent travel to Colombia before 2018), the defendant has robust ties to that country.

\* \* \*

At a certain point while the defendant was living in Colombia, he came to believe that he faced criminal exposure in the United States for having profited as a black-market supplier of oxycodone and other controlled substances. So he never returned. Not even to visit his mother, his siblings, or any other members of his "close-knit family." (Dkt. 50 at 4). Instead, he hid out in Colombia, taking steps to stay off the radar. And when justice finally caught up with the defendant, he confronted it with a final effort at evading accountability. He fraudulently held himself out to be a state actor, replete with badge and gun. Because there are no conditions that will reasonably assure the defendant's appearance and the safety of the community, the Government respectfully requests that the Court deny him bail.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: *Samuel P. Rothschild*

Tara M. La Morte
Samuel P. Rothschild
Robert B. Sobelman
Assistant United States Attorneys
(212) 637-1041 / -2504 / -2616

cc: David J. Cohen, Esq. (by ECF)